DOWD, J.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | | |
|---|---|---|
| Richard R. Brown, et al., | ) | |
|     Plaintiff(s), | ) | CASE NO. 3:03 CV 7321 |
| | ) | |
| v. | ) | |
| | ) | |
| Nationwide Mutual Insurance Co., et al., | ) | |
|     Defendant(s). | ) | |
| | ) | |
| ------------------------------------------------- | ) | -------------------------------------- |
| Richard R. Brown, et al., | ) | |
|     Plaintiff(s), | ) | CASE NO. 3:03 CV 7322 |
| | ) | |
| v. | ) | |
| | ) | |
| Jay T. Valusek, et al., | ) | |
|     Defendant(s), | ) | |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss filed by the defendants in this consolidated case. (Doc. No. 15). The motion has been converted to a motion for summary judgment. See Order of November 23, 2005 (Doc. No. 26). It has been fully briefed, including supplementally. (See Doc. Nos. 18-19, 21, 32, 33-34, and 35). In addition, the transcript of the deposition of plaintiff Richard Brown has been filed in support of the motion. (Doc. No. 17). There is also a motion for judgment on the pleadings (Doc. No. 36), which was tardily filed by the plaintiffs. It has been opposed. (Doc. No. 37).

(3:03 CV 7321/7322)

Finally, there is a defendants' motion to strike an appendix (Doc. No. 20), which has been opposed (Doc. No. 22). All of these motions are ripe for determination. For the reasons set forth below, the defendants motion to dismiss/for summary judgment is granted and plaintiffs' motion for judgment on the pleadings is denied.

## II. BACKGROUND

Pro se plaintiff Richard R. Brown[1] taught vocational marketing education at Upper Sandusky Exempted Village Schools ("Upper Sandusky Schools") from 1979 until 1994. As a result of a heart attack suffered at school in March 1994, along with an attack of Meniere's Disease,[2] he applied for disability benefits under the State Teachers Retirement System ("STRS") and, after first being denied benefits, was eventually granted permanent disability retirement status on April 1, 1995. Plaintiff has not held a teaching position since March 1994 and, in fact, is legally ineligible to work as a teacher so

---

[1] Brown graduated from Cleveland-Marshall College of Law in 1968 and was admitted to the Ohio Bar that same year. (Brown Dep. 8). He is licensed to practice law and is admitted to the bar of this court. (Brown Dep. 8-9). He actually began his teaching career in 1962, but left teaching in 1969 to work as legal counsel for the Cleveland Trust Company. (Brown Dep. 9). He also worked for other corporate clients in the years following his graduation from law school. In 1976, he became an associate professor of law at Ohio Northern University and later taught at Akron University College of Law. (Brown Dep. 10-11). He left this position in 1979 to begin his employment as a high school marketing education teacher. He has practiced law part-time during much of his teaching career. (Brown Dep. 11-12). Therefore, to refer to Brown as "pro se" is a little misleading. He is obviously capable of representing himself here.

[2] Meniere's Disease causes ringing in the ears and vertigo.

2

(3:03 CV 7321/7322)

long as his disability status continues.³  Nevertheless, plaintiff has waged an on-going battle with Upper Sandusky Schools based on the following facts which are developed on the record.

During the 1994 school year, the Upper Sandusky Schools decided to transfer the vocational programs, including the ones Brown taught, to Vanguard-Sentinel Joint Vocational School ("Vanguard") effective the following school year.  Brown was advised that he was required to accept a transfer from Upper Sandusky's high school to the middle school.  Brown went to talk to the Superintendent about this on March 8, 1994.  It was during or shortly after this meeting that he suffered a heart attack and an attack of Meniere's Disease.

On March 7, 1996, Brown filed a complaint in the Wyandot County Court of Common Pleas seeking damages for alleged intentional contractual interference and fraudulent misrepresentation.  He was essentially asserting misrepresentation of the financial figures used to make the determination to transfer the vocational programs from Upper Sandusky Schools to Vanguard.  He later voluntarily dismissed the complaint.

On September 27, 1996, Brown filed another complaint in Wyandot County challenging a denial of his right to workers' compensation benefits.  Brown lost that case, all the way to the Ohio Supreme Court.

On October 29, 1997, Brown filed suit in this court in a case captioned Brown v. McGlamery, et al., Case No. 3:07cv7707.  He purported to bring this action on his own behalf and on behalf of the

---

³ Ohio Rev. Code § 3307.64 provides that "[a]n individual receiving a disability benefit from the [State Teachers Retirement] [S]ystem shall be ineligible for any employment as a teacher and it shall be unlawful for any employer to employ the individual as a teacher."

3

(3:03 CV 7321/7322)

taxpayers of Wyandot County for alleged tortious acts committed between 1993 and 1997. He again alleged intentional contractual interference and recurring instances of fraudulent misrepresentation of the Upper Sandusky Schools' financial condition as it related to the transfer of the vocational programs to Vanguard. He also alleged that, while he was a teacher at Upper Sandusky Schools, he was discriminated against on the basis of age and disability and because he exercised his first amendment right of free speech to criticize actions of the school board. This case was tried to a jury in June 1999. The jury rendered a verdict in plaintiffs' favor for intentional employment discrimination and retaliation. The case was ultimately resolved by a settlement agreement and dismissed with prejudice, with appeal rights waived by all parties.

On May 27, 2003, Brown filed a third complaint in Wyandot County Court of Common Pleas and, three days later, on May 30, 2003, he filed a complaint in the Sandusky County Court of Common Pleas. Both of these cases asserted issues which had already been litigated. Brown also raised challenges to the denial of his workers' compensation claim. Both of these cases were removed to this Court on June 20, 2003 and were consolidated.

Brown's complaint is not an exercise in clarity. However, the gravamen of the complaint is simply that Brown disagreed with the decision made in 1994 by Upper Sandusky Schools to transfer the vocational programs to Vanguard.[4] He apparently believes that this decision, which he claims was made on the basis of a misrepresented financial situation, is the root cause of his present problems. He

---

[4] Brown has, in the past, been a "negotiator" for the collective bargaining unit and has had many disagreements over how the schools were run.

4

(3:03 CV 7321/7322)

further claims that Upper Sandusky is in breach of contract for failing to give him a teaching position after his heart attack (which he seems to believe was caused by Upper Sandusky Schools) and that the Schools violated his rights under the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). In addition to seeking damages, Brown, who has 25 good years in the STRS,[5] also wants the additional service credits which he claims he lost because of the breach of his employment contract.[6]

## II. DISCUSSION

### A. Many Claims Barred By the Statute of Limitations

The vast majority of the allegations in Brown's complaint have no place in federal court or, for that matter, in any court. Most of his claims are state law claims (e.g., fraud and misrepresentation, defamation, intentional and/or negligent infliction of emotional distress, and breach of contract)[7] and many of those are barred by the statute of limitations.

---

[5] Brown was born in August 1941. He will soon be 64 years old. His wife is also a retired teacher with her own participation in STRS. She, too, had 25 years of service at the time of her retirement in 1999 or 2000. (Brown Dep. 6).

[6] At a status conference conducted on November 19, 2004, the Court discussed Brown's concern about wanting more service credits so as to better protect his wife should he die. Brown claims to have been told by someone in the STRS organization that, because he is on disability, he cannot make an election to protect his wife. The Court suggested that Brown write a letter to the STRS, with a copy to the Court, inquiring as to whether that is a correct understanding and, if so, why and, if not, how Brown can best proceed to assure protection for his wife. See Order of November 23, 2004 (Doc. No. 26). There's no indication that Brown has followed the Court's advice.

[7] Although this Court has discretion to exercise supplemental jurisdiction over state law claims which are based on the same facts as federal claims over which it does have jurisdiction, it is not required to do so and rarely does. See 28 U.S.C. § 1367(c)(2).

5

(3:03 CV 7321/7322)

The statute of limitations for fraud and misrepresentation is four years from the date of accrual. Ohio Rev. Code § 2305.09(C). Brown's allegations of fraud occurred between 1994 and 1997. Therefore, 2001 is the latest any such claims could be brought.

The statute of limitations for libel and slander is one year. Ohio Rev. Code § 2305.11. In his complaint, Brown asserts that he was verbally attacked at a school board meeting on June 23, 1996. Clearly that claim falls outside the statute.

For intentional infliction of emotional distress the statute of limitations is four years and for negligent infliction, two years. Ohio Rev. Code § 2305.09(D); 2305.10. Again, these claims arose from events that allegedly occurred in June 1996. They, too, are barred.

Any action seeking damages for tortious injury by a political subdivision, such as a school board, must be brought within two years. Ohio Rev. Code §§ 2744.01(F), 2744.04.

Many other claims have already been litigated in a prior lawsuit and are barred by res judicata and/or collateral estoppel (e.g., his claims of retaliation for exercise of his free speech rights and his claims of ADA and/or ADEA discrimination and for breach of contract, which were litigated in the 1997 action before this court).

Any claim relating to denial of Workers' Compensation is peculiarly within the province of the Ohio state courts. In fact, as of the filing of the original motion to dismiss (November 2003), litigation remained pending in Wyandot County Common Pleas Court.

6

(3:03 CV 7321/7322)

Any relator claims are not properly brought under Ohio law, see Ohio Rev. Code § 5705.45 and 733.59, requiring first a written request to the prosecuting attorney. These claims do not belong in federal court in any event.

All of the above claims are instances where plaintiff either (1) sat on any rights he might arguably have had, which this Court strongly doubts in any event, and/or (2) is simply unwilling to accept the judgment of other courts and/or tribunals. This Court will devote no time to addressing these various claims that either do not belong here, are time-barred, or are no more than a rehash of earlier litigation.

**B. Federal Claims**

The only claims that arguably belong before this Court are those made under the ADEA (Count Ten) and the ADA (Count Eleven). These two counts state in their entirety:

COUNT TEN
Age Discrimination in Employment Acts [sic] (ADEA)

86. Plaintiff filed charges of employment discrimination against Defendants, Upper Sandusky Board of Education, with the Ohio Civil Rights Commission and the Equal Employment, setting forth those facts and continuing conduct of Upper Sandusky school District, as alleged hereinbefore, constitute violations of 29 U.S.C. Section 630 b *et seq.*, as amended, and the Age Discrimination in Employment Acts (ADEA).

COUNT ELEVEN
American [sic] with Disabilities Act (ADA)

87. Plaintiff filed charges of employment discrimination against Defendants, Upper Sandusky Board of Education with the Ohio Civil Rights Commission and the Equal Employment Commission, setting forth those facts and continuing conduct of Upper Sandusky School District, as alleged hereinbefore, constitute continuing violations fo Title VII, 42 U.S.C. Section 2000 (e) et seq., as amended and the American with Disabilities Act (ADA).

7

(3:03 CV 7321/7322)

Although the Court believes that these claims are barred by both the relevant statute of limitations and a complete failure to allege facts in the complaint which would assure this Court that Brown has met the statutory pre-requisites for filing such claims, the Court will nonetheless examine them on the merits. They fail that examination.

Aside from the two paragraphs quoted above from the complaint, there are absolutely no factual allegations from which anyone could conclude that there was discrimination in employment. Nor does Brown's deposition support these claims. In fact, his deposition shows the complete inconsistency of his position: he wants to collect disability, but he also wants to assert that Upper Sandusky School's "failure" to give him a teaching position (while he claims to be disabled) is some sort of discrimination. At his deposition, Brown testified as follows in relation to the school year beginning 1998:

> Q. Were they threatening to discontinue your disability at that point?
>
> A. Right, the State teachers, right, because it was Vanguard-Sentinel that said I kept applying for a job. This is another harassment-type thing. They were the ones that notified the State Teachers Retirement System that I had been applying for another job. They wouldn't hire me, but they notified the State Teachers Retirement System, and that's why.
>
> Q. So their position was, "Hey, this guy is taking retirement. Why is he applying for jobs with us? You should know about this"?
>
> A. Right. Because I had been filing the charges against them with the Civil Rights Commission, and, of course, either the disability law -- and the disability law at that time was sort of unclear. I mean, you know, it's open to interpretation. But it's pretty well clear that you don't have to -- just because you apply for disability doesn't mean that you are disabled. It's not a false claim.

8

(3:03 CV 7321/7322)

> Q. What does it mean if you apply for disability?
>
> A. That you don't think you're capable of continuing your duties on a daily basis.
>
> Q. You went down to STRS that day in 1998 when they were threatening to discontinue your disability?
>
> A. Right.
>
> Q. You went down there and said what?
>
> A. I didn't get a chance to say anything. So again, I got very upset because I wanted a hearing with the board, but they had granted a continuation on my disability.
>
> Q. It was STRS that made that determination, right, not the board?
>
> A. Right. But they had made the determination that I was coming off of disability.
>
> Q. But then you persuaded them not to do that?
>
> A. I wanted the marketing education position.
>
> Q. Right. But you said you went down -- did you actually go to Columbus?
>
> A. Yeah. On the first day, I went to Columbus.
>
> Q. To convince them not to disqualify you from your disability?
>
> A. Well, to find out the status. Not to -- you know, it was very left open. If I got the marketing ed position, then I was prepared to do that except I would have to work without having any sick leave, and that would have been difficult except you get five days or whatever to start with. But they had taken away wrongfully, in my opinion, my sick leave accumulation.

9

(3:03 CV 7321/7322)

> Q. <u>Do you at least acknowledge the ideological inconsistency of a certification every year that you're Disabled and unable to perform the function of your job but yet saying that you are capable of doing the job?</u>
>
> A. <u>Right. I understand that. But that doesn't mean that the employer doesn't have to honor the employment of a disable person who all I have to say is, "Hey, keep the disability retirement. I'm back to teaching." That's all you have to do.</u>

(Brown Dep. 79-81) (underlining added).

Apparently, Brown is unwilling to give up his disability benefits, even though he wants to be able to apply for a job (from which he is supposed to be disabled) and then claim disability discrimination if he does not get it, where the reason he does not get it is because he is still on disability. Brown's argument is circular and unsupported by law or fact.

### III. CONCLUSION

Having examined all of the briefs and having read Brown's deposition carefully, the Court concludes that the defendants in these consolidated cases are entitled to summary judgment in their favor and the same shall be entered.

IT IS SO ORDERED.

| | |
|---|---|
| May 23, 2005 | s/ David D. Dowd, Jr. |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |